716 So.2d 819 (1998)
Andrew Gene TULLIS, Appellant,
v.
STATE of Florida, Appellee.
No. 96-1687.
District Court of Appeal of Florida, Fifth District.
August 14, 1998.
Daniel S. Ciener, David J. Romett, Andy M. Fouche, Curtis N. Flajole of Law Firm of Daniel S. Ciener, Merritt Island, for Appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and Kristen L. Davenport, Assistant Attorney General, Daytona Beach, for Appellee.
W. SHARP, Judge.
Tullis appeals his convictions and sentences for sexual battery on a child by a person in familial or custodial authority[1] and lewd and lascivious act upon a child.[2] He claims the trial court committed reversible error when it permitted the jury to take a videotape of the alleged victim's interview with a law enforcement officer into the jury room during the jury deliberation. We agree and reverse.
This is a close case which turns on the credibility of the victim: Tullis' stepdaughter Michelle, and her friend Lisa, who were the primary witnesses on behalf of the state. The acts complained of allegedly occurred over Memorial Day weekend, 1994, while Tullis, who is physically disabled, was recuperating from rotator cuff shoulder surgery. His left arm was in a sling, he was unable to bathe, and otherwise unable to care for himself. At the time, Tullis and his wife, Elise, had a houseful of guests, including Lisa. Tullis and Elise had earlier barred Lisa from their home for four months, and she had only recently been permitted to visit again.
Both Michelle and Lisa are developmentally disabled and enrolled in educable mentally handicapped classes at different schools. Michelle was 13 years old at the time of the alleged incident and took the drug Ritalin. Michelle is very suggestible. Lawson, a counselor, testified that Michelle agreed with any person in authority, and Michelle herself testified that she just agreed with whoever *820 was asking questions when she is scared or nervous.
The evidence showed that on the Tuesday after Memorial Day weekend, Lisa told a friend and teacher at her school that Tullis had committed sexual battery on Michelle that past Sunday evening. At trial, Michelle testified that the first time she heard about the sexual battery was from Lisa, and that Lisa told her to lie about Tullis touching her because she, Lisa, wanted to live with Michelle and her parents. Michelle also stated that Lisa was going to hurt her if she did not lie. Neither girl told any adults, or anyone else about the alleged abuse at the time it occurred. Nor did they tell anyone about it the next day. Lisa did not even tell her parents.
Michelle was interviewed by Detective Elizabeth Gilbert, an investigator with the Palm Bay Police Department, who spoke with Michelle on Wednesday following the alleged incident. This interview was taped. In the interview, Michelle made incriminating statements to Gilbert regarding Tullis' actions that weekend. However, at the trial, Michelle testified that when she was interviewed by Gilbert on videotape, she was nervous and just agreed with what Gilbert said.
Michelle also gave different versions of the story at a deposition in 1994. And in a 1995 hearing, she again gave inconsistent stories. When the state questioned her, she stated that Tullis touched her in a sexual way, but when the defense questioned her, she said that Lisa told her to tell an untrue story about Tullis touching her because Lisa wanted to live with them. She specifically denied that Tullis ever touched her in a sexual manner.
The medical evidence was inconclusive. Michelle's hymen was intact, there was no evidence of injury, and her pelvic examination was normal. There was no physical evidence of any sexual encounter, and her examination was consistent with no sexual contact. However, the medical witness testified that this did not rule out the possibility of an earlier sexual encounter.
Tullis testified on his own behalf. He contended that Michelle had made up the story at Lisa's suggestion. He denied that he had sex with Michelle or touched her private parts. At the sentencing hearing, a mental health counselor who examined Tullis testified that Tullis had none of the characteristics and qualities of a sex offender and that she believed he was not guilty of the crimes charged.[3]
At the close of the evidence, defense counsel renewed its motion for judgment of acquittal, which was denied. The defense also objected to the trial judge's ruling which permitted the jury to take the videotape into the jury room during deliberations. Based on that ruling, defense moved for a mistrial which was also denied.
However, after jury deliberations had begun, the state attorney did additional research and called the trial court's attention to case law which prohibits videotaped interviews from being taken into the jury room during deliberations. The judge called the jury back. The judge said she probably should not have allowed the videotape to be viewed by the jury during its deliberations; and she had the videotape removed. The court asked how many times the jurors had viewed the videotape. One juror responded the videotape had been viewed just once, but the other jurors were not polled. And no inquiry was made as to how the videotape had been viewed, i.e., whether it had been stopped and replayed in parts, which would have further tended to focus the jurors' attention on certain aspects of Michelle's statements.
Videotaped, out of court interviews of alleged child sexual abuse victims are not permitted into the jury room during jury deliberations. Young v. State, 645 So.2d 965, 967 (Fla.1994). Playing a videotape during jury deliberations, even on one occasion, is prohibited because it places undue emphasis on the videotape over other oral testimony and denies the accused the opportunity to cross-examine the witness. Id.
*821 In light of the facts in this case, we find this error particularly egregious. The truth of the charges against Tullis turned solely on determining the credibility of three individuals: Tullis cogently denied the charges; Lisa substantiated them, and Michelle continually gave contradictory statements depending on who was asking the questions. In permitting the jury to take the videotaped interview with it into the jury room, the jurors' attention was focused on Michelle's videoed statements that Tullis had sexually abused her, without giving him an opportunity to elicit her equally forthcoming statements that he had not abused her. As in Young, we find this to be harmful error; one that severely prejudiced Tullis and denied him a fair trial.
REVERSED AND REMANDED.
PETERSON and THOMPSON, JJ., concur.
NOTES
[1] § 794.01(8)(b), Fla. Stat. (1993)
[2] § 800.04(1), Fla. Stat. (1993)
[3] In a prior case against Tullis, Lisa claimed she had also been sexually abused by Tullis on the same occasion as the one at trial. Based on similar evidence, that jury acquitted Tullis.